Good morning, your honors. May it please the court. Brandon Sample for the appellate, Mr. Eddie David Cox. I want to focus today on three errors that the district court made which warrant reversal. First, the district court lacked jurisdiction to re-sentence Mr. Cox, notwithstanding the Central District of Virginia. Second, the statute is divided into three parts. Part A relates to the jurisdictional character of 18 U.S.C. 3582 C-1B. That statute, which was enacted as part of the Sentencing Reform Act, bars district courts from modifying a term of imprisonment unless, to the extent otherwise expressly permitted by statute, that statute under this court's precedence is jurisdictional. Part B deals with the application of Section 3582 C-1B to the particular facts of this case, which are essentially reduced to whether re-sentencing by an original sentencing court following a grant of Section 2241 relief by a district court in another circuit is, in fact, a modification to the extent otherwise expressly permitted by statute. It is not. Part C addresses the government's free to re-sentence because venue was effectively transferred to the district court as a result of Cox's request for re-sentencing. Contrary to the government's arguments, the district court still lacked jurisdiction to re-sentence Cox, assuming venue was transferred because the district court lacked jurisdiction under Section 2241 consistent with this court's precedence. Second, we argue that the district court's 966 month sentence on an 83 year old man who has been in prison for 30 years with credit for good conduct time is substantively unreasonable. And third, the district court lacked authority to re-sentence De Novo because the Section 2241 grant of relief was limited to Section 3582C1B. It is clear that Section 3582C1B is a jurisdictional statute. This court in United States v. Amman held that district courts lacked jurisdiction to re-sentence pursuant to Section 3582C2, which deals with the retroactive application of amendments under the sentencing guidelines unless the requirements for relief pursuant to that statute are met. Section 3582C1B is equally of jurisdictional character like Section 3582C2 because Section C1B constrains a district court's ability to modify a term of imprisonment unless to the extent otherwise expressly permitted by statute. In fact, the Tenth Circuit in a series of cases has held that Section 3582C1B is a jurisdictional statute and the same. So how do you account for 2243's rather broad statement of allowing the habeas court to dispose of it as justice and law requires? There's no dispute that the habeas court has broad remedial authority under 28 U.S.C. 2243, but that is a separate question about whether this 3582C1B is a concerning the jurisdictional issue. The interrelation between 28 U.S.C. 2243 and whether or not it constitutes one of those statutes, whether or not it expressly permits re-sentencing is a separate issue. And to answer the court's question, that statute does not apply to the Western District of to be able to do anything in the first instance. The way the statute, 28 U.S.C. 2243, is written, it's in very, very broad terms. It allows the habeas court to be able to dispose of a case as law and justice require. And so if we juxtapose that to 3582C1B, Congress has said that it must be to the extent otherwise expressly permitted by the statute. It's too far of a stretch to say that the broad remedial authority afforded to the section 2241 court also somehow confers jurisdiction on an original sentencing court that otherwise would have no ability to do what was done by the Central District of Illinois. So in essence, you know, the district court here, it had no ability to be able to act pursuant to 28 U.S.C. 2255. It had no inherent authority to be able to And if this action had been brought in the first instance in the Western District of Missouri, if Mr. Cox had been confined as a prisoner here under Abdullah v. Hedrick, this court's precedents would have precluded the original sentencing court from being able to do anything. And so this court should not permit the Western District of Missouri to effectively do an in-run around the savings clause jurisprudence that's here. Can you go back for just a minute? How was he able to actually bring this under 2241? Yes, Your Honor. My recollection, not having studied up on it recently, is that to actually attack the sentence, you've got to go back to the sentencing court under 2255. Mr. Cox has a long record of litigation challenging his sentence, both in the district court and in this court. And essentially what happened was is that after the Johnson decision was handed down, Mr. Cox sought leave to file a second or successive 2255 motion from this court. And this court, without explanation, denied that motion. In the motion, Mr. Cox had argued that he was entitled to relief under Johnson because he had a kidnapping prior that was no longer qualifying. But he also argued in there that when you have another prior that was also not qualifying but it didn't come into play under Johnson, that is, is that he was convicted of a controlled substance offense under the predecessor statute to the Controlled Substances Act. And in essence, he argued that because all the while up until Johnson there were the requisite three predicates to support the ACCA enhancement, then the issue was not right about the ability to challenge this pre-CSA prior, the use of it to until Johnson was handed down. And so after this court had denied authorization to file a second or successive 2255, Mr. Cox filed a 2241 in the Central District of Illinois. And he argued there, consistent with the Seventh Circuit's precedents, that there was a structural problem with 2255 such that it allowed resort to 2241 in this specific kind of circumstance. And that is, is that in essence, basically re-urging the same things that were said in the application for leave to file a second or successive with this court, that his ability to be able to challenge the continued use of the pre-CSA prior was not ripe until Johnson came out. And that because this court had denied authorization to file a second or successive 2255, it had also implicitly rejected the notion that he could proceed on that theory through 2255, which in turn allowed him to be able to resort to the 2241. Did the government challenge that? The government, the government did not. They, they did challenge the the notion of Mr. Cox being able to bring the 2241. They did not challenge the underlying issue about whether or not the pre-CSA prior counted. But in essence, the government's position in the habeas litigation was that Cox should have raised this argument previously, that he had all kinds of opportunities to do so. And the rebuttal to that was, again, while he could have conceivably raised this issue at sentencing or something along those lines, the common practice, as this court is well aware, is that sentencing courts do not address issues that are irrelevant to the sentencing calculus. If there were, at the time of the original sentencing, sufficient priors. See, my point is that's how I thought we avoided this type of situation, where we had two different courts sentencing, or potentially two different courts sentencing, is that 2255 was your only avenue for relief when you're attacking the sentence. That's why I'm just curious how he was able to bring it under 2241. Under the Seventh Circuit's precedents, it permits him to be able to resort to a 2241 in this particular situation. And if, if that action were brought in the A circuit, it would not have been permitted to proceed. Okay, that's what I thought, but I'm not familiar with the Seventh Circuit's precedent. Yes, Your Honor. So then if he were, so in your view, under 2241 and 2243, it's the 2241 court that disposes of the matter as law and justice required, and that would include either what sort of we more commonly think of 2241 with a habeas, just release from detention, right, the true habeas corpus. It also gives that 2241 court the power to re-sentence. Absolutely, Your Honor. So then what, you know, then you've got the, I don't know if it's the reverse, but a corollary of the problem that you've just discussed with Judge Grunder, which is what circuit's law then applies in, in the Central District of Illinois when he's re-sentenced? I believe that the, they would apply the law of the Seventh Circuit at the time of the re-sentencing. I don't believe there would be a choice of law question that would arise in that kind of circumstance, but to be frank, I'm not aware of any authorities on, on this particular point. This is so rare as it is. And it see, and it also seems that in this particular situation, I can understand why Mr. Cox, given what's happened here, wants to go back to the Central District of Illinois, but I wonder if sometimes you have to be careful what you wish for because you're going to a district that has no background information on you and has to reinvent a wheel that may or may not be as attractive of a wheel as you would have had in your home, when I say home, your sentencing court. Is that a problem that we should be considering or thinking through, sort of the practical realities of how this might work? I mean, I appreciate the court's question about the practical realities. I think, though, that first and foremost, we have the statutory problem that we have to overcome about the Western District of Missouri's ability to do anything in the case. And if, and if there, if this court holds that it didn't have the ability to do anything, then the practicalities, of course, are not relevant. I would note, although it's not in the record, and I would ask the court to take judicial notice, is that the respondent in the action specifically advocated that if the Western District of Missouri did not choose to do the resentencing, that the 2241 court should take it upon itself and do a full resentencing. And we, of course, never got there because the Western District of Missouri did, in fact, resentence. But sometimes you get things that you don't necessarily want. I mean, and sometimes you do. And, I mean, there's, I think, though, that the court is probably best served by establishing a bright line rule that addresses this particular circumstance because I know that there is another case that's currently pending before this court that also arose from the Central District of Illinois, and this gentleman was resentenced in the District of Minnesota, and he had also an outcome that was probably not what he wanted. So . . . Has that been argued yet? It has not, Your Honor. It's that United States v. Ralph Duke. And so, I don't have a clear answer about that, and I don't think there is actually a clear answer with respect to the so-called practicalities. Just out of curiosity, do you know what the Seventh Circuit precedent is that allowed the 2241 to proceed? Yes. There's a case called Poe v. Lariva, which was the principal case that we relied upon in the Central District of Illinois. In that case, the Seventh Circuit had talked about a traditional savings clause test under N. Ray Davenport, which basically looks at whether or not he had an unobstructed procedural shot to be able to raise the claim in the first instance, or has there been an intervening statutory change in the law that wasn't available originally? And in Poe v. Lariva, the court, though, had commented that the Davenport test . . . and there's an in-bank decision called Webster from the Seventh Circuit as well . . . but in Poe v. Lariva, they said that those two cases represented examples only of how the savings clause test could be utilized. And so, in the habeas court, we argued for a further extension of the existing savings clause authority in the Seventh Circuit as applied to Mr. Cox's particular situation. And the district court there, of course, agreed, and that was partly informed by a decision . . . a comment by Judge Easterbrook in a case called United States v. Stanley, where he had said, essentially, that in a situation where somebody tried to raise a Johnson claim, that if the . . . if there was some other related issue that didn't become relevant until Johnson, that it might be proper to bring that in the 2255. And so, the district court in Illinois said that, based on this court's summary denial of the 2255 without explanation, that that was essentially an implicit rejection of, like Judge Easterbrook's Stanley example of permission . . . of how it would be a companion issue in the context of the application relief to file a second or successive. So, to get back to some of my points about the interaction between the two statutes, it is . . . the government makes an argument, interestingly, about the Second Circuit's Treisman decision. Treisman was a 2241 court that granted an old Bailey claim, and the 2241 court ultimately re-sentenced on all the counts, because it found that they were interdependent with the count that was vacated. And he challenged that before the Second Circuit, and the Second Circuit held that it was permissible for the habeas court to be able to unbundle the sentence and to sentence on all counts. The government, in this case, has said that the Central District of Illinois would not have had the ability to be able to re-sentence, and so that, in essence, compelled the Western District of Missouri to do what it did. But I don't believe that that's accurate. It's not consistent with Treisman, and it doesn't make sense, nor is it consistent with the broad remedial authority under 2243, which the Court has already alluded to, that would permit the 2241 court to take appropriate action. And with respect to the government, they've also kind of said that you basically got what you asked for. You asked to be re-sentenced, and so ultimately you were re-sentenced over here in the Western District of Missouri. There was no formal transfer of venue in this case. It is true that Mr. Cox asked to be re-sentenced, but the Central District of Illinois never entered any kind of order that transferred venue of this case to the Western District of Missouri. And the government, the respondent in that case, did not, in fact, do that. When we look at the habeas court's order, in the order it says the respondent, the respondent is directed to deliver Cox to the United States District Court for the Western District of Missouri for re-sentencing. The entirety of the Central District of Illinois's order is directed at the respondent, because under the immediate custodian rule, the writ is not directed at the court that authorized the original sentence, but the person who, the entity, the person who's detaining the prisoner. And I see my time is running down, and I will reserve my balance. Very well. Good morning, Mr. Clark. Good morning, may it please the court. Mr. Cox filed a motion under 2241 asking the Central District of Illinois to order the respondent warden to deliver him to the Western District of Missouri for re-sentencing. He got what he wanted. That's what he asked for? Yes, that's what he asked for. The court did what Mr. Cox wanted. He granted his request and directed the warden to deliver Mr. Cox to the Western District of Missouri for re-sentencing. The court's authority to do so under 2241 is the remedial provision under 2243, which states that the court is allowed to dispose of the matter as law and Missouri refused to accept it. It's an equal court to the court in the Central District of Illinois. What if it had said, I don't think we have the authority to do that. Would, in your view, would the 2241 court then have the authority to do the re-sentencing? I think under Seventh Circuit law, the 2241 court, and there's a case like that cited in the brief, the Bry case, where I believe the Middle District of Florida said we're not going to accept. We have co-equal jurisdiction with you. You can't order us to re-sentence somebody and so we're not going to do that. In that case, it would fall back to the 2241 court to dispose of the matter as law and justice require. It's not your view that the 2241 court doesn't have the authority to re-sentence. It's just that the first choice should be the . . . sort of what's your . . . There are, and I cite a case in the brief, the Seppanak case, which is a district court case, but there's a long discussion there as to why it is more in the interest of justice and in judicial resources and the economy of those resources to go back to the sentencing court, which has all the records on the familiarity with the defendant, and that should be the court that changes the sentence of the defendant, not the 2241 court. So the district court in the Western District of Missouri, I suppose, could have refused saying I'm a district court, you're a district court, you don't have authority to order me to do something. And then in your view, I think the district court in Central District of Illinois left this open. Yes, it did. Actually, Mr. Cox requested the Central District of Illinois to go ahead and re-sentence him there, and the Central District of Illinois basically stated no, I'm going to wait and see what happens in the Western District of Missouri. After the Western District of Missouri agreed to re-sentence Mr. Cox, and in fact re-sentenced him, then the Central District of Illinois denied the motion. But in your view, I guess just to backtrack a little bit, your position would be that if the Western District of re-sentence? 2243 is a broad remedial provision, and it seems to me that under Seventh Circuit law, yes. So would you have objected if the Central District of Illinois had just done that out of the gate initially, as opposed, instead of transferring? In other words, is that sort of, in your view, the 2241 court's prerogative to decide what law and justice requires? Keep it I think that option exists. Because of the broad language of the remedial provision, there are cases where, like Treisman, where the 2241 court conducts re-sentencing. There are other cases where it gets sent back to the sentencing court to conduct the re-sentencing. Treisman was the same, I mean essentially the same court though, wasn't it? Yeah, it was the same court. It may be a different judge, but same court. Yes, but the 2241 court did the re-sentencing there, and there are other cases where the 2255, where the original sentencing court conducts the re-sentencing. But the question is not, Mr. Cox's argument is that he doesn't have jurisdiction to do that, and our position is that 2243 is the express grant, statutory grant, that 3582C1B requires. And that's also what Treisman says. That is an express grant of statutory authority to do the re-sentencing. Now it's broader than Mr. Cox would like. It allows either the 2241 court or the original sentencing court to because you can't rely on the law in both of those, right? So the jurisdictional one is as expressly allowed under law, and then you go to 2243, well, as law would allow. Whether it's jurisdictional or procedural, there has to be some vehicle to get it before the original sentencing court, and in this case it's the 2241 action. Mr. Cox, Mr. Cox was resentenced by the Worcester District of Missouri. The district court conducted a de novo re-sentencing, sentenced him to 966 months imprisonment. As this court has noted before, when a court, when a defendant attacks a multi-count or a multi-conviction indictment, there is one judgment that is issued by the court, and then when he starts attacking portions of that judgment, that court, that judgment unravels, and then the court is free to conduct a de novo resentencing. It seems like a lot of our case law that developed that line was in connection with 924 C's, when you had the gun count and an underlying drug count, which then didn't have the enhancement under the guidance, so there was this interconnectedness. What's the interconnectedness here that wouldn't be in any case that is multi-count? In other words, is there any exception to the rule of, as you presented, of the district court being permitted to unbundle, because it's always one sentence that's ultimately imposed, whether or not there's a 924 C drug count connection or not? Well, in this particular case, the original sentencing court, Judge Hunter, sentenced the defendant to three terms of life imprisonment, count one, counts five, and count eight. Count one was reversed on appeal. Counts five and eight are the subject matter of the 2241 litigation. The reason that it is interdependent is because it is clear that the district court, the original sentencing court, wanted Mr. Cox to serve a term of life imprisonment, and if he had not had those life imprisonment sentences available to him, in other words, the 924 A2 sentences, the ten-year sentences were his limits on the felon in possession charges, then he could have done exactly what the district court did here, because all of those sentences were available, and the district court implemented basically what the original sentencing court wanted. So your position is you go back to the sentencing transcript to see how the court reached to that, or is it just the idea that it was a life sentence, so therefore the district court must have? I'm trying to find some kind of guidance for determining when it is so interconnected, because it seems like the 924 C example gives us something tangible to talk about. What you're presenting is sort of, well, it was life, that's what the judge wanted to do, so let's do it again, even though there are two counts now that don't carry the same term of imprisonment allowable. I'm trying to figure out what's the guiding principle here, how do we figure that out? I think you can go back to this, as the court knows, this case has a long history of litigation. There have been multiple occasions for this court to address the life sentences that were imposed upon Mr. Cox originally, and there is case law on this case noting that that is an appropriate and reasonable sentence for Mr. Cox to have received. So, and it is, and this court has noted that it is clear from the transcript of the original sentencing court, Judge Hunter's sentencing, that he knew this defendant, he was experienced with this defendant, and that he thought that the only reasonable sentence based on the defendant's criminal history was a life sentence. So, in this particular case, it is clear that the original sentencing court wanted to impose a life sentence. This court has reaffirmed that on and basically what the Judge Fenner did in sentencing Mr. Cox was to implement, by term of years, the intent of the original sentencing court. Also based on the 3553 factors, which were Mr. Cox's rather extensive criminal history. So that's, I think they are interdependent in this case for that Just curious, did you or your office represent the government in the Central District of Illinois, or was that the U.S. Attorney's Office there? That was U.S. Attorney's Office there. Mr. Clark, I'm curious also, going back to the jurisdictional issue, has the United States previously asserted the same position and interpretation of the statutes in other cases, or is it unique to this case? I do not know what the United States, sorry, I don't know what the United States position was. In this case, what the government argued at the 2241 stage. Yeah, I'm curious if they conceded that 2241 was a proper way of attacking this sentence? And or do you agree with Well, what the court held in the in the Central District of Illinois was that under this particular set of facts, where you had a count that went out, a conviction that went out because of Johnson, and there was a prior conviction that was infirmed for a different reason, it wasn't available under 2255, and it was available under 2241. Whether the Eighth Circuit would reach that opinion is... Okay, that's the problem I'm having. That just doesn't make any sense to me. My understanding is the only way you can attack your sentence is through 2255, and to allow it to be done under 2241 leaves us this When you're taking a look at 2241 litigation, there is not an abundance of guidance on how to do this. But isn't that because the appropriate method is 2255 back to your sentencing court, not where you're being detained? Well, as I noted, there are other courts that have sent it back to the original sentencing court for resentencing. And it's within the remedial, as I said, the remedial provisions of 2243 to dispose of the matter. And so that's, I think that's the reason why Mr. Cox asked for that relief. It had been granted in other cases. There's another Western District of Missouri case where it had been granted. He cites that in his motion. He requested that because it had already been tried and received a that he wanted, which is got sent back to the Western District of Missouri for resentencing. Mr. Cox also makes a double jeopardy argument with respect to some of his counts of conviction. That argument that he notes that this court has previously ruled that double jeopardy is not a bar to the resentencing on the other counts of conviction. And he basically makes that argument in order to preserve it. He also argues that the court considered improper factors, but if you take a look at the transcript, clearly the district court went through Mr. Cox's criminal history and found the same as the original sentencing court, Judge Hunter, that Mr. Cox should receive a sentence of life imprisonment, or what is in effect a sentence of life imprisonment, under 3553 factors. It did not improperly consider any factors in sentencing the defendant. Mr. Cox asked for 2241 relief. He asked for this relief. He got the relief that he The court had jurisdiction to do that under 2241 and implementing the 2243. Mr. Cox may not like the sentence that he received in the Western District of Missouri, but it is what he asked for, and the United States believes that this court should affirm the district court's decision in this case. No other questions? Very well. Thank you. Your Honor, just to return to the government's point again about Mr. Cox basically receiving what he asked for, the Seventh Circuit has recognized that district courts have no power under 1404 to transfer a case to another circuit, not even on its own initiative and not also upon the motion of a party. There has to be consent. There has to be consent between both the parties to move the case. This is arising from a case called Webster v. Daniels. But if your client asks for it, isn't that consent? Consent of both parties. Both parties. The government has to consent as well, too. It's never happened in this case. It's never happened. And to also return to— Well, did the government oppose and say it should be sentenced right here in Central Illinois? Well, it did oppose originally, just in the sense of not wanting— But once relief was granted, did it do anything to suggest that the sentence should occur in Central Illinois? No, it said, though, that it was proper to be able to do that. But then the problem arises that if the court accepts the notion that transfer was proper under 1404, and there are cases, even post-judgment, that tend to support the idea that a case can be transferred, then now you're assuming, now you're saying that the Western District of Missouri is exercising authority under 2241 and 2243, but then you run into this court's Savings Clause jurisprudence, which says that it's a jurisdictional constraint, Abdullah v. Hedricks. Enlighten me a little bit more on this 2241 versus 2255, because it seems to me that generally I think you'll agree that attacking your sentence under 2241 is not the appropriate avenue. It's 2255. And this court turned your client down. Does that make it unavailable under 2241 because we turned it down? That doesn't seem to me like it makes it unavailable. It was available, but he got denied. If I may respond. Please, please. So 2255 has the Savings Clause that if it is inadequate or ineffective to test the leality of detention But why is it inadequate? This court made a decision. Why should Central Illinois get to say that that was inadequate? It's inadequate because the Central District of Illinois implied that because Cox could not meet the requirements to file for second or successive relief, that meant that 2255 itself was not an available remedy. And he was raising an argument that was not ripe until Johnson was decided. So then we have an underlying constitutional issue that comes into play, Your Honor. Thank you. I appreciate that. Thank you. Very well, counsel. The case is well argued, and we will issue an opinion in due course.